UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

PURDUE PHARMA L.P., et al.,

            Debtors.

STACEY BRIDGES and CREIGHTON BLOYD,

            Appellants,

- against -

PURDUE PHARMA L.P., et al., and THE UNITED STATES OF AMERICA,

            Appellees.

**OPINION AND ORDER**

23-CV-03779 (PMH)

PHILIP M. HALPERN, United States District Judge:

Stacey Bridges and Creighton Bloyd ("Appellants") appeal from an order of the United States Bankruptcy Court for the Southern District of New York (Lane, B.J.) ("Bankruptcy Court"), announced from the bench on March 31, 2023 (JA 1612),[1] and filed as a written order on April 20, 2023 (AP Doc. 44),[2] dismissing the Adversary Proceeding below for failure to state a claim on which relief could be granted (the "Bankruptcy Court Order"). A Notice of Appeal dated April 14, 2023 was filed in this Court on May 4, 2023 (Doc. 1).

Appellants filed their brief on July 14, 2023. (Doc. 11, "App. Br."). Purdue Pharma L.P. ("Purdue") together with its affiliates that are debtors and debtors in possession (collectively, the "Debtors"), and the United States of America ("U.S." and together with the Debtors, "Appellees") each filed their briefs on August 17, 2023 (Doc. 12, "Purdue Br."; Doc. 13, "USA Br."), and the

---

[1] Citations to "JA___" are to the Joint Appendix filed by Appellees. (Doc. 14—Doc. 22).

[2] Citations to "AP Doc. ___" are to the electronic docket in the Adversary Proceeding. *Bridges, et al. v. Purdue Pharma L.P., et al.*, No. 21-AP-7088.

appeal was fully submitted with the filing of Appellants' reply brief on September 14, 2023 (Doc. 25, "Reply").

For the reasons set forth below, the Bankruptcy Court Order is AFFIRMED.

## BACKGROUND

"Engulfed in a veritable tsunami of litigation," *In re Purdue Pharma, L.P.*, 635 B.R. 26, 35 (S.D.N.Y. 2021), *rev'd and remanded sub nom. In Re Purdue Pharma L.P.*, 69 F.4th 45 (2d Cir. 2023), the Debtors filed for bankruptcy on September 15, 2019. (BR Doc. 1).[3] The U.S., on July 30, 2020, filed a proof of claim based on a criminal investigation relating to the "Debtors' marketing, sale, manufacturing, and distribution of opioid and other pharmaceutical products," that implicated violations of a number of criminal statutes (JA0001, "DOJ Criminal Claim"). The U.S. also filed a proof of claim stemming from a civil investigation of the Debtors. (JA0011, "DOJ Civil Claim"). These claims included a forfeiture claim of at least $3.5 billion, criminal fines of at least $6.2 billion, and other civil damages of at least $2.8 billion. (*See* DOJ Criminal Claim; DOJ Civil Claim). The U.S. had filed several additional claims against the Debtors as well.

Purdue and the U.S. entered into a plea agreement on October 20, 2020 whereby Purdue agreed to plead guilty to three criminal charges in an indictment filed in the United States District Court for the District of New Jersey; and on October 21, 2020 reached a civil settlement. (*See* JA 1323, JA 0149). Both the plea agreement and the civil settlement granted the U.S. certain allowed claims against the Debtors' estates. (*See id.*). Those claims included "an allowed superpriority administrative expense claim against [Purdue]" in the amount of $2 billion with priority over any and all claims and administrative expenses of any kind; an allowed claim totaling $3.544 billion

---

[3] Citations to "BR Doc. ___" are to the electronic docket in the underlying Bankruptcy Proceeding. *In re Purdue Pharma L.P.*, No. 19-BK-23649.

as a result of a criminal fine to be imposed on Debtors; and an allowed claim "against [Purdue] in the amount of $2.8 billion arising from the DOJ's civil investigation." (*See* JA-0030, "9019 Motion"). The U.S. further agreed to provide a credit offsetting the $2 billion superpriority administrative expense claim of up to $1.775 billion for any value distributed or otherwise conferred by Purdue under a plan of reorganization in respect of claims asserted by state, tribal, or local government entities. (*Id.*).

On October 21, 2020, the Debtors filed a motion (the "9019 Motion") seeking the Bankruptcy Court's approval to enter into a comprehensive resolution of the U.S.'s claims against Purdue (the "DOJ Resolution"). (*Id.*). All parties in the bankruptcy had an opportunity to oppose the 9019 Motion. Appellants did not file any papers in connection with the 9019 Motion. The Bankruptcy Court held a hearing on November 17, 2020. (JA0253). Appellants did not appear at the hearing. The Bankruptcy Court approved the settlement at the hearing and, on November 18, 2020, entered a written order confirming its grant of the 9019 Motion. (JA 0288, "9019 Order"). Appellants did not appeal the 9019 Order.

The Adversary Proceeding in the Bankruptcy Court (and at issue in this appeal) was commenced on August 30, 2021 by the filing of a Complaint which alleged a single claim for equitable subordination of the U.S.'s claims to those of Appellants and other personal injury victims. (JA 1313). Appellants asserted that the U.S. "ignor[ed] the rights of victims" under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A. (*Id.* ¶ 9). By agreeing to resolve civil and criminal charges against the Debtors under the terms of the DOJ Resolution, the U.S. thereby allegedly "declined to vindicate the rights of victims of the Debtors." (*Id.* ¶ 4). Appellants further asserted that the U.S. "could have easily counted at least some of the victims of Debtor[s'] conduct" by reviewing the thousands of personal injury claims filed and calculating

3

"the resources necessary to rehabilitate victims." (*Id*. ¶¶ 5-6). By failing the do so, Appellants allege the U.S. "undermined the position of victims whose rights are protected by federal statute and who were entitled to liens." (*Id*. ¶ 8). Although Appellants acknowledged that the 9019 Order provides that certain claims shall not be subject to subordination (*Id*. ¶ 11), Appellants suggested that the Bankruptcy Court was not "constrained" by the 9019 Order to prohibit equitable subordination "if the Court included such language without having been fully advised of the premises," such as the "failure to the United States to vindicate rights under the MVRA." (*Id*.).

On September 1, 2021, the Bankruptcy Court issued a bench ruling confirming the Debtors' Twelfth Amended Joint Chapter 11 Plan of Reorganization (the "Plan"). (JA 360). The Plan provided for the Debtors to pay the U.S. $225 million, with a credit applied to the balance of the $2 billion claim based on amounts allocated under the Plan to state, tribal, and local governments for remediation efforts to address the opioid crisis. (*See id*. § 2.3). The Plan allocated $50 million to the U.S. in satisfaction of its claims stemming from the DOJ civil settlement, the DOJ criminal fine, and the Federal Healthcare claims (*see id*. § 4.3), as well as an additional $26 million relating to a resolution regarding healthcare costs incurred by certain federal agencies (*see id*. § 5.2(h)). The bench ruling confirming the Plan was docketed on September 17, 2021. (JA-0518).

The Debtors and the U.S. filed motions to dismiss the Complaint in the Adversary Proceeding in November 2022. (JA 1419; JA 1452). On March 31, 2023, the Bankruptcy Court issued the Bankruptcy Court Order dismissing the Complaint with prejudice.

This appeal followed.

## STANDARD OF REVIEW

This Court has jurisdiction to hear appeals from decisions of a bankruptcy court pursuant to 28 U.S.C. § 158(a), which provides in pertinent part that "[t]he district courts of the United

4

States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees; . . . [and,] with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy judges." "The Bankruptcy Court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed *de novo*." *In re Markus*, 78 F.4th 554, 563 (2d Cir. 2023). The clear error standard permits the Court to set aside the Bankruptcy Court's factual findings only if the Court is "left with the definite and firm conviction that a mistake has been committed." *Sacerdote v. New York Univ.*, 9 F.4th 95, 119 (2d Cir. 2021) (citing *United States v. U.S. Gypsum*, 333 U.S. 364, 396 (1948)). "[C]lear error review mandates that [the Court] defer to the [Bankruptcy Court's] factual findings, particularly those involving credibility determinations." *Id.* (citing *Phx. Glob. Ventures, LLC v. Phx. Hotel Assocs., Ltd.*, 422 F.3d 72, 76 (2d Cir. 2005)). A *de novo* review on the other hand allows the Court "to decide the issue as if no decision had been previously rendered. No deference is given to the Bankruptcy Court's decision." *In re Reilly*, 245 B.R. 768, 772 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000).

   Further, a bankruptcy court's interpretation of its own order is given deference on appeal and is reviewed for abuse of discretion. *See Guerriero v. Rayhan*, No. 10-CV-04483, 2011 WL 4374957, at *3 (E.D.N.Y. Sept. 19, 2011). The abuse of discretion standard is a narrow one. *Amelio v. Piazza*, 2019 WL 5199600, at *3 (S.D.N.Y. Aug. 27, 2019), *aff'd sub nom. In re Amelio*, 857 F. App'x 665 (2d Cir. 2021). "The Bankruptcy Court 'necessarily abuse[s] its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *In re Kalikow*, 602 F.3d 82, 91 (2d Cir. 2010) (quoting *In re Highgate Equities, Ltd.*, 279 F.3d 148, 151 (2d Cir. 2002)).

**ANALYSIS**

The Bankruptcy Court dismissed the Adversary Proceeding for failure to state a claim because it found the allegations in the Complaint constituted an impermissible collateral attack on the 9019 Order in a scenario where Appellants had forfeited such challenge; and because the factual allegations in the Complaint did not satisfy the demanding standard for equitable subordination. Upon a full review of the record, this Court concludes that the Bankruptcy Court correctly considered and applied the facts and law, appropriately dismissing the Complaint.

I.   Appellants' Collateral Attack on the 9019 Order

The Bankruptcy Court correctly found that Appellants forfeited their right to challenge the 9019 Order in the Adversary Proceeding filed by not objecting to the 9019 Motion or challenging the 9019 Order. The 9019 Order included the Bankruptcy Court's determinations that the U.S.'s Forfeiture Judgment shall be treated as a superpriority administrative claim and that the Government's criminal fine and civil resolution claims "shall not be subject to subordination." (9019 Order ¶¶ 3, 5-7).

The deadline to oppose the 9019 Motion was November 12, 2020. (*See* JA 0026). Appellants did not oppose or otherwise file any documents in connection with the 9019 Motion. Appellants likewise did not timely challenge the 9019 Order. As the Bankruptcy Court correctly held, a final unappealed order is not subject to collateral attack by any party that stood idle and did not object to the challenged order or appeal it. *AEC One Stop Grp., Inc. v. Bain Cap. Fund IV L.P.*, 9 F. App'x 53, 55 (2d Cir. 2001). Where, as here, "a party has had the opportunity to litigate the propriety of a court's order, it may not reopen the question in order to make a collateral attack on an adverse judgment." *Id.*; *see also Insurance Corporation of Ireland versus Compagnie des Bauxites de Guinee*, 456 U.S. 694 at 702 n.9.

6

Since Appellants did not object to the 9019 Motion or timely challenge the 9019 Order before the time to appeal had expired, the 9019 Order became final on December 2, 2020. *See In re The Bennett Funding Grp., Inc.*, 439 F.3d 155, 160 (2d Cir. 2006) (court approval of a settlement pursuant to Rule 9019 "that brings to an end litigation between parties is a final order"); Fed. R. Bank. P. 8002(a)(1). Indeed, and despite Appellants' arguments to the contrary (*see* App. Br. at 15), a bankruptcy court order approving a settlement is a final order, even if the settlement so approved cannot be consummated until a second court also approves the settlement. *In re Bennett Funding Grp.*, 439 F.3d at 164. Appellants also argue that the 9019 Order was not final because they had no reason to know, until a plan was confirmed, that they would ultimately be deprived "of their rights to subsidies for their medical treatment." (Reply at 4; App. Br. at 13 (arguing that the Plan was not yet public)). However, the 9019 Motion specifically sought Court approval for a settlement that specified how the Government's claims would be treated, including the provision that the Government had a superpriority administrative claim and general unsecured claims that could not be subordinated. The plea agreement also put Appellants on notice that restitution would not be sought; and the Complaint, filed in August 2021 prior to the Plan's confirmation, pled facts about and concerning the plea agreement. There is no support in the law or this record for the argument that the 9019 Order did not become a final order just because the Plan had not yet been confirmed.

The Complaint at issue was a collateral attack on the 9019 Order because it expressly sought to subordinate claims which the 9019 Order granted administrative priority to or to subordinate claims which were not subject to subordination. (*See* JA 1313 ¶ 11; 9019 Order ¶¶ 3, 5-7). Thus, as the Bankruptcy Court correctly held, the relief requested by the Complaint could not have been granted without nullifying essential provisions of the 9019 Order. *Keybank Nat'l*

*Ass'n v. Franklin Advisers, Inc.*, 616 B.R. 14, 30 (Bankr. S.D.N.Y. 2020) ("A 'collateral attack' is an attack on an order that is made in a proceeding (other than a direct appeal) that is different from the proceeding in which the order was entered and that seeks to undo or nullify the order itself.").

Appellants make the untenable argument that the 9019 Order can remain in effect despite their requested subordination. (App. Br. at 14). As the U.S. points out, and as the Bankruptcy Court correctly concluded, the dictates of the 9019 Order and the relief requested by Appellants are mutually exclusive. The 9019 Order provides the Government with a superpriority administrative claim and general unsecured claims that cannot be subordinated, while Appellants seek to subordinate those claims. Those provisions of the 9019 Order could not remain in effect if the requested subordination were to be granted.

Accordingly, the Bankruptcy Court correctly dismissed the Complaint as an impermissible collateral attack on the 9019 Order.

II. <u>Equitable Subordination</u>

The Bankruptcy Court's alternative basis for dismissal was likewise supported by the facts and law. Separate and apart from the first basis for granting the motion to dismiss, because the Complaint was an improper collateral attack on a prior unappealed order, the Bankruptcy Court dismissed Appellants' Complaint for the independent reason that Appellants did not plead facts sufficient to state an equitable subordination claim for relief.

As the Bankruptcy Court explained, the statutory authority for an equitable subordination claim is Section 510(c) of the Bankruptcy Code, which authorizes subordination only when such relief is consistent with established "principles of equitable subordination." A party seeking equitable subordination must demonstrate that: (1) the creditor whose claim is to be subordinated "engaged in some type of inequitable conduct"; (2) the "misconduct . . . resulted in injury to the

creditors of the bankrupt or conferred an unfair advantage on the claimant"; and (3) "[e]quitable subordination of the claim [is] not . . . inconsistent with the provisions" of the Bankruptcy Code. *In re: Aéropostale, Inc.*, 555 B.R. 369, 397 (Bankr. S.D.N.Y. 2016) (citing *In re Mobile Steel Co.*, 563 F.2d 692, 699-700 (5th Cir. 1977)). The Bankruptcy Court correctly found that the Complaint did not plausibly plead facts to satisfy at least two the foregoing criteria. (JA 1612 at 23:11-26:15).

With respect to the first element, as the Bankruptcy Court explained, Appellants failed to allege the kind of egregious misconduct that would satisfy the "extraordinary remedy" sought. *In re: Aéropostale, Inc.*, 555 B.R. at 397. A plaintiff seeking to subordinate the claims of a non-insider must allege "egregious, improper, or wrongful conduct that damages creditors." *Id*. at 410. The requisite conduct must be truly extreme: conduct that is "tantamount to fraud, misrepresentation, overreaching [or] spoliation," *id*., and that involves "moral turpitude," "illegality or some other breach of a legally recognized duty," *80 Nassau Assocs. v. Crossland Fed. Sav. Bank (In re 80 Nassau Associates)*, 169 B.R. 832, 838-39 (Bankr. S.D.N.Y. 1994) (collecting cases). Neither the Complaint nor Appellants' briefing contains allegations that the U.S. committed fraud or acted illegally. Appellants allege that U.S. violated a duty owed them under the MVRA. (JA 1313 ¶¶ 3-4, 8-9). They argue that the U.S. "improperly waiv[ed] Bloyd's and Bridges' statutory rights, and reserve[ed] to itself payment of monies which ought to have been paid to Bloyd and Bridges as statutorily-mandated restitution." (App. Br. at 6).

As the Bankruptcy Court found, the MVRA does not impose a duty on the U.S. to resolve its criminal charges on any different terms that would have provided financial restitution to Appellants. A federal agency's decision whether to prosecute and what charge to file are decisions "committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985); *see also United States v. Batchelder*, 442 U.S. 114, 124 (1979). As the Bankruptcy Court noted, the

9

U.S.'s decision to enter into plea agreements "and the terms of such agreements" are "matters of prosecutorial discretion." (JA 1635 at 24:17-24). *See also United States v. Estrada-Plata*, 57 F.3d 757, 760 (9th Cir. 1995) ("[T]he decision whether to offer a plea bargain is a matter of prosecutorial discretion." (internal quotation marks omitted)). The decision by the U.S. not to seek restitution simply is not of the type and caliber of statements that would warrant equitable subordination based upon fraud or making false statements.

Further, the MVRA does not even provide a private right of action. 18 U.S.C. § 3664(p) ("[n]othing" in the MVRA, or "arising out of the application" of the MVRA, "shall be construed to create a cause of action not otherwise authorized in favor of any person against the United States . . ."); *see Mackey v. U.S. Dep't of Justice*, No. 16-CV-03865, 2017 WL 1424437, at *5 (E.D.N.Y. Jan. 30, 2017). Nor does the MVRA apply to civil matters. *See* 18 U.S.C. § 3663A(a).

The Complaint failed to allege inequitable conduct by the U.S. and in any event, as the Bankruptcy Court also correctly held, Appellants failed to allege a resulting injury to them or the conferral of a benefit upon the U.S. *In re Mobile Steel Co.*, 563 F.2d at 700. Appellants' arguments that they were injured because the U.S. did not resolve its claims on terms that would have also provided restitution or offset the entire $2 billion (App. Br. at 8, 11) do not demonstrate that the U.S.'s conduct reduced their bankruptcy recoveries. *See In re Aéropostale*, 555 B.R. at 398-99. Rather, the U.S.'s conduct provided enhanced recoveries for creditors such as Appellants, and to its own detriment. As stated by the Bankruptcy Court, "the DOJ resolution enhanced the recoveries of creditors other than the United States and that's because the United States agreed to reduce its own recovery by up to $1.775 billion to allow that amount to be distributed to other Creditors, and without that agreement, there likely would be nothing left for other Creditors to obtain from the Debtors." (JA 1612 at 25:17-26:8).

Finally, and although the Bankruptcy Court did not and need not have reached this issue, the Complaint was also properly subject to dismissal because equitable subordination would have been inconsistent with the Bankruptcy Code. The Bankruptcy Code "generally does not imbue creditors with greater rights under a bankruptcy proceeding than they would enjoy under the otherwise applicable non-bankruptcy law," *White Current Corp. v. Rural Util. Serv., U.S. Dep't of Agric. (In re Vt. Elec. Generation & Transmission Co-op., Inc.)*, 240 B.R. 476, 486 (Bankr. D. Vt. 1999). As discussed above, the MVRA does not provide a private right of action. Thus, the Complaint sought to achieve in bankruptcy what has been specifically precluded outside of bankruptcy, thus running afoul of the spirit of the Bankruptcy Code. In addition, as discussed above, the Bankruptcy Court lacks authority to review the prosecutorial decisions of agencies. Thus, it would be inconsistent with the Bankruptcy Code for the Bankruptcy Court to do so.

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's Order is AFFIRMED.

Appellants' request for oral argument is denied as unnecessary because the facts and legal arguments are adequately presented and the decisional process would not be significantly aided by oral argument. Fed. R. Bank. P. 8019(b)(3).

The Clerk of Court is respectfully requested to close this case.

**SO ORDERED.**

Dated:   White Plains, New York
         March 20, 2024

_____
PHILIP M. HALPERN
United States District Judge